UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ZEHRID S.,

                                         Plaintiff,

   v.                                                                     6:23-CV-094 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                         Defendant.
_____

PETER W. ANTONOWICZ, ESQ., for Plaintiff
VERNON NORWOOD, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

**MEMORANDUM-DECISION and ORDER**

    Plaintiff commenced this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security, denying his application for benefits. This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. No. 5). Both parties filed briefs, which the court treats as motions under Federal Rule of Civil Procedure Rule 12(c), in accordance with General Order 18.

**I.**    **PROCEDURAL HISTORY**

    On June 24, 2020, plaintiff protectively filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning June 15, 2020. (Administrative Transcript ("T") 78). Plaintiff's application was denied initially on

December 28, 2020 (T. 97-108), and upon reconsideration on April 6, 2021[1] (T. 117-19).  On April 1, 2022, Administrative Law Judge ("ALJ") Jeremy Eldred conducted a hearing during which plaintiff and vocational expert ("VE") Ruth Baruch testified.  (T. 31-49).  On April 14, 2022, the ALJ issued a decision denying plaintiff's claim.  (T. 11-20).  This decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on January 3, 2023.  (T. 1-4).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standards

To be considered disabled, a plaintiff seeking DIB or Supplemental Security Income benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

---

[1] The ALJ's decision refers to the date as March 11, 2021, but the notice of reconsideration in the administrative record uses the date April 6, 2021.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review "– even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

3

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Id.*  *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g.*, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]").  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  FACTS

Plaintiff was fifty-nine years old on the alleged disability onset date.  (T. 11, 34).  He had at least a high school education and lived in a house with his wife and his dog.  (T. 34, 45, 601).  Plaintiff was able to drive, but testified that he had difficulty stepping into his truck.  (T. 39).  Plaintiff previously worked as a building maintenance worker for the county.  (T. 35).  Plaintiff testified that he fell while on the job, but returned after surgery.  (T. 36).  In 2014, he was wrongly terminated from the same job, but returned

again after ten months. (T. 36). He testified he was ultimately terminated again because of his dependence on sleeping pills. (T. 37).

Plaintiff testified that he had posttraumatic stress disorder from surviving a genocide in his home country (T. 45) and being unlawfully terminated from a job (T. 36). He testified that he had war flashbacks, but not on a daily basis. (T. 45). Plaintiff also testified the unlawful termination caused "high depression, anxiety," and sleeping problems. (T. 36). He further testified that he was dependent on sleeping pills, which caused him to fall asleep while working. (T. 37). He also testified he was taking other medication for anxiety, depression, schizophrenia, and "heavy mental problems." (T. 43).

Plaintiff testified that he also had issues with arthritis, his lower back, and his hips. (T. 38). He testified that he had constant lower back pain because of damage to his low back and hip. (T. 39). He also testified that he had a difficult time walking, but could walk "slowly" for about a mile before pain occurs. (T. 38). He further testified that he walked in the park about one mile every day. (T. 39). Plaintiff also testified to "lost ability" in his arms, but he was still able to perform basic tasks like eating, showering, reading, writing, and buying groceries. (T. 41, 43). He further testified that he was able to lift approximately two pounds, but could not lift a case of water. (T. 42). He testified he was unable to lift heavier items because of disc herniations in his spinal cord. (T. 42).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 19). Rather than reciting this evidence at the outset, the court

will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.     THE ALJ'S DECISION

The ALJ first determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since his alleged onset date of June 15, 2020. (T. 13). Next, the ALJ found that plaintiff has the severe impairment of degenerative changes of the lumbar spine. (*Id.*). The ALJ decided, however, that the plaintiff had not established a "severe" mental disorder. (T. 14). At the third step, the ALJ determined that plaintiff's impairment did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 16).

At step four, the ALJ found that plaintiff had the residual functional capacity ("RFC") "to perform a full range of work at the medium exertional level, as defined in the regulations, except he can climb, stoop, kneel, or crouch no more than frequently, and can crawl no more than occasionally." (T. 16). In making the RFC determination, the ALJ stated that he considered all of plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (T. 16). The ALJ further noted that he fully considered "the medical opinion(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. § 404.1520(c). (*Id.*).

After considering plaintiff's statements regarding his symptoms, along with the other evidence of record, the ALJ concluded that "the evidence does not support the [plaintiff's] allegations regarding the extent of the functional limitations caused by his symptoms." (T. 17). The ALJ then determined that plaintiff was able to perform his

past relevant work as a building maintenance worker. (T. 19). Accordingly, the ALJ concluded that plaintiff was not disabled from June 15, 2020, through the date of the decision. (T. 19).

## V.  ISSUES IN CONTENTION

Plaintiff raises five arguments:

1. The ALJ erred by failing to properly account for plaintiff's mental limitations in his RFC determination. (Plaintiff's Brief ("Pl.'s Br.") at 18-20) (Dkt. No. 9).

2. The RFC was not supported by substantial evidence because the ALJ failed to find any opinion evidence from examining medical sources that was consistent with the evidentiary record. (Pl.'s Br. at 16-18).

3. The ALJ erred by finding the state agency consultants' opinions persuasive. (Pl.'s Br. at 14-17).

4. The ALJ erred by failing to perform a function-by-function analysis prior to determining plaintiff's RFC. (Pl.'s Br. at 16-18).

5. The ALJ did not meet his burden of proof to show that plaintiff could perform his past relevant work because the ALJ did not ascertain the amount of hours plaintiff was required to stand/walk at his prior occupation. (Pl.'s Br. at 11-13).

Defendant contends that the Commissioner's determination should be affirmed because the ALJ properly considered the state agency consultants' opinions and the ALJ's RFC was supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 10-17) (Dkt. No. 11). For the reasons stated below, this court agrees with the defendant and finds the ALJ's decision was supported by substantial evidence.

# DISCUSSION

## VI. RFC/EVALUATING MEDICAL EVIDENCE/EVALUATING SUBJECTIVE SYMPTOMS

### A. Legal Standards

#### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill*, No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff can perform and may not simply make conclusory statements regarding a

plaintiff's capacities. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2. Evaluation of Medical Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical

opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853. An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered

those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### 3. Evaluation of Subjective Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ must "'carefully consider' all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling ("SSR") 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 2016 WL 1020935, 81 Fed. Reg. 14166-01 at 14169-70, (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of the term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use that term. SSR 16-3p, 81 Fed. Reg. at 14167. Instead, symptom evaluation tracks the language of the regulations.[2] The evaluation of symptoms involves a two-step process. First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

---

[2] The standard for evaluating subjective symptoms has not changed in the regulations. Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear that the evaluation of the plaintiff's symptoms is not "an evaluation of the claimant's character." 81 Fed. Reg. at 14167. The court will remain consistent with the terms as used by the Commissioner.

If so, at the second step, the ALJ must consider "'the extent to which [the plaintiff's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the plaintiff's] symptoms affect [her] ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing inter alia 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49)) (alterations in original).[3]

If the objective medical evidence does not substantiate the plaintiff's symptoms, the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013). The ALJ must assess the plaintiff's subjective complaints by considering the record in light of the following symptom-related factors: (1) plaintiff's daily activities; (2) location, duration, frequency, and intensity of plaintiff's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the plaintiff to relieve symptoms; and (7) any other factors concerning plaintiff's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

**B.     Analysis**

Plaintiff argues the ALJ erred because his "RFC did not include any mental limitations, despite his previous assessment of mild limitations in all four broad areas of mental functioning." (Pl.'s Br. at 19). It is well established that "a finding of a certain degree of limitation in an area of mental functioning when engaging in the psychiatric

---

[3] The court in *Barry* also cited SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) which was superceded by SSR 16-3p. As stated above, the factors considered are the same under both rulings. The 2016 ruling has removed the emphasis on "credibility."

review technique prescribed by the regulations for assessing the severity of a mental impairment does not require any specific corresponding limitation in the RFC finding." *Tricia W. v Comm'r of Soc. Sec.*, No. 5:22-CV-794 (DNH/DJS), 2023 WL 4471661, at *3 (N.D.N.Y. June 8, 2023), *report and recommendation adopted*, 2023 WL 4471792 (N.D.N.Y. July 11, 2023) (quoting *Maura B. C. v. Comm'r of Soc. Sec.*, 2022 WL 2789102, at *6 (N.D.N.Y. July 15, 2022)); *Christian H. v. Comm'r of Soc. Sec.*, No. 20-CV-1490, 2022 WL 3648022, at *4 (W.D.N.Y. Aug. 24, 2022) (citing cases) ("[I]f a mental impairment causes only mild limitations that do not result in any functional work-related restrictions, the ALJ does not err by formulating an RFC without mental limitations or restrictions.").

Moreover, the ALJ explicitly discussed the extent of plaintiff's purported mental limitations and their effect on his RFC analysis. Specifically, the ALJ noted that plaintiff "can go out alone, shops in stores, two to three times a week, and is able to pay bills, count change, and handle a savings account." (T. 17). The ALJ also noted plaintiff "has no problems getting along with family, friends, neighbors, or others, can follow spoken and written instructions, and has no problems getting along with bosses, teachers, police, landlords, or other people in authority." (T. 17). The ALJ further noted that consulting psychologist, Dr. Alexander's mental status examination findings were benign (T. 600-01), and other evidence showed plaintiff's "mental health symptoms are under control with treatment" (T. 415, 477). (T. 19). The ALJ specifically stated that "the record does not support the existence of any 'severe' mental disorder." (T. 17). It is clear that the ALJ considered plaintiff's mental limitations when crafting the RFC.

Plaintiff also argues "the ALJ failed to find any opinion evidence from examining medical sources that was consistent with the evidentiary record." (Pl.'s Br. at 16). This is inaccurate as the ALJ found the opinions of state agency consultants Dr. Elhert and Dr. Miller both persuasive and "consistent with other evidence in the record." (T. 18). The ALJ also found the opinion of the consultative examining psychologist persuasive and "consistent with other substantial evidence in the record." (T. 19). The ALJ is not required to accept every limitation in the various medical opinions or to craft an RFC mirroring a particular opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.").

Plaintiff has not cited any legal authority to support his next contention, that the ALJ may not rely on the opinion of a state agency consultant if the state agency consultant partially relied on a different opinion that the ALJ found unpersuasive. (*See generally* Pl.'s Br.). The court does not find plaintiff's argument persuasive for the following reasons. First, there is no indication, based on the state agency consultants' narratives, that they relied solely or largely on Dr. Jenouri's opinion. (T. 73-74, 92). The state agency consultants' lengthy narrative rationales cite to objective medical evidence in addition to Dr. Jenouri's report, including multiple MRIs, plaintiff's activities of daily living, and Dr. Cemer's evaluation. (T. 73-74, 92). Second, the ALJ only found Dr. Jenouri's opinion unpersuasive if "it intended to assign greater functional limitations than the limitations in the residential functional capacity." (T. 18).

14

Plaintiff additionally argues the state agency consultants' opinions were stale because they "reviewed the file early in the process and more than a year prior to the administrative hearing." (Pl.'s Br. at 14-15). Plaintiff's claim was originally evaluated by Dr. Ehlert and Dr. Brown on December 23, 2020. (T. 62-77). It was evaluated on reconsideration by Dr. Miller and Dr. Chapman on March 10, 2021. (T. 79-95). The hearing took place on April 1, 2022 (T. 31) and the ALJ's decision was issued on April 14, 2022 (T. 20). By itself, "[a] gap of time between when an opinion is rendered and the disability hearing and decision does not automatically invalidate that opinion." *Majdandzic v. Comm'r of Soc. Sec.*, No. 17-CV-1172, 2018 WL 5112273, at *3 (W.D.N.Y. Oct. 19, 2018). Only a "meaningful change" in plaintiff's condition during the gap will do so. *Lamar v. Comm'r of Soc. Sec.*, No. 18-CV-829, 2020 WL 548376, at *3 (W.D.N.Y. Feb. 4, 2020).

Plaintiff has not identified any medical evidence suggesting that the state agency consultants' opinions should be more restrictive because of a "meaningful change" in plaintiff's condition through the rendering of the ALJ's decision. With respect to physical impairments, the ALJ even noted that "there is no evidence that the [plaintiff] has been receiving treatment in recent months from a specialist for back pain, and treatment records from June 28, 2021 state the [plaintiff] did not report any physical health problems." (T. 18). The ALJ also noted plaintiff's "primary care records from November 17, 2021 indicate that the [plaintiff's] physical conditions are under control with medication, and there was no mention of any concerns related to should pain or back pain." (T. 18).

With respect to mental limitations, the state agency consultants concluded that plaintiff had "not established a medically determinable mental impairment." (T. 18). However, the ALJ concluded that plaintiff's posttraumatic stress disorder was a medically determinable impairment based on "all of the evidence now in the record, including mental health treatment records that were unavailable to Dr. Brown and Dr. Chapman." (T. 18). Instead of relying on the state agency consultants, the ALJ relied on consultative examining psychologist Dr. Alexander. (T. 17). Therefore, the ALJ did not err by relying on stale opinions.

Plaintiff argues that the ALJ committed reversible error by failing to perform a function-by-function analysis prior to determining Plaintiff's RFC. (Pl.'s Br. at 16-18). Plaintiff takes specific issue with his ability to stand and walk. (Pl.'s Br. at 18). The Second Circuit has found that the failure to provide a function-by-function analysis is not a per se ground for remand, noting that "[w]here an ALJ's analysis at Step Four regarding a [plaintiff's] functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, [ ] remand is not necessary merely because an explicit function-by-function analysis was not performed." *Cichocki v. Astrue*, 729 F.3d 172, 176-77 (2d Cir. 2013) (collecting case from other circuit courts that have declined to adopt a per se rule). The Second Circuit did note that remand might be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful

16

review." *Cichocki*, 729 F.3d at 177 (citing *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001)).

The ALJ found that plaintiff had the RFC to perform medium work, except that he can climb, stoop, kneel, or crouch no more than frequently, and can crawl no more than occasionally. (T. 16). The ALJ's RFC determination did not specifically articulate plaintiff's abilities to walk, but instead incorporated by reference the definition of medium work in 20 C.F.R. § 416.967(b).[4] The ALJ did specifically note that plaintiff goes for daily walks and reported no physical health problems on June 28, 2021. (T. 17). The ALJ also noted "primary care records from November 17, 2021, indicate that the [plaintiff's] physical conditions are under control with medication." (T. 18). This court finds that the ALJ's failure to make explicit function-by-function RFC findings does not warrant remand.

Plaintiff additionally argues the ALJ erred by "fail[ing] to ascertain the number of hours that the plaintiff was required to stand and walk" during his past relevant work

---

[4] Medium work involves, inter alia, "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). "The distinction between medium work and light or sedentary work is the ability to lift and carry greater weight." *Torres v. Comm'r of Soc. Sec.*, No. 6:12-CV-231 (GLS/ATB), 2013 WL 103573, at *5 (N.D.N.Y. Jan. 8, 2013), *report and recommendation adopted*, 2013 WL 103595 (N.D.N.Y. Jan. 8, 2013). A person who can perform medium work is also presumed to be able to perform light and sedentary work. 20 C.F.R. § 404.1567(c). Light work includes jobs that require "a good deal of walking or standing . . . ." 20 C.F.R. § 404.1567(b). Social Security Ruling ("SSR") 83-10 elaborates on the requirements of light work, the relevant portions which indicate "the full range of light work requires standing or walking, off and on, for a total of approximately six hours in an eight-hour workday." 1983 WL 31251 at *6. Both state agency consultants, upon whose opinion the ALJ relied in part, specifically found that plaintiff could stand or walk for about six hours in an eight-hour workday. (T. 72, 90).

17

as a building maintenance worker.[5] (Pl.'s Br. at 13). As defendant correctly notes, plaintiff bears the burden at step four of showing that he is unable to perform his past relevant work, and the ALJ is entitled to find plaintiff is not disabled if he can perform his past relevant work either as generally performed in the national economy or as he actually performed it in the past. *Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013); *Pagnani v. Comm'r of Soc. Sec.*, No. 1:12-CV-1287 (NAM/VEB), 2014 WL 1268912, at *9 (N.D.N.Y. Mar. 26, 2014) ("At step four of the sequential evaluation, the claimant will be found not disabled if she can perform her past relevant work, either as she actually performed it, *or* as it is generally performed in the national economy."). Here, the ALJ determined that plaintiff could perform his past relevant work "as it is generally performed in the national economy," as opposed to how the past relevant work was actually performed. (T. 19). Therefore, the ALJ was not required to ascertain the number of hours plaintiff was required to walk/stand at his past relevant work because the ALJ can make his decision based solely on the plaintiff's ability to perform the position as generally performed. *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) ("Past relevant work in the fourth stage of the inquiry includes 'the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy.'") (quoting *Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981)).

**WHEREFORE**, based on the findings above, it is

---

[5] Plaintiff refers to this argument as an issue in step five of the disability evaluation process. (Pl.'s Br. at 12). This is incorrect, as the ability of plaintiff to perform past relevant work is determined at step four. 20 C.F.R. § 404.1520. Step five concerns whether there is other work in the national economy that plaintiff can perform. (*Id.*).

**ORDERED**, that plaintiff's motion for judgment on the pleadings (Dkt. No. 9) be **DENIED;** and it is further

**ORDERED,** that defendant's motion for judgment on the pleadings (Dkt. No. 11) be **GRANTED**; and it is further

**ORDERED**, that the decision of the Commissioner be **AFFIRMED**, and plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY**.

Dated: August 30, 2023

Andrew T. Baxter
U.S. Magistrate Judge